1998 OK CIV APP 158

**WITCO and Old Republic Insurance, Petitioner,**

v.

**CONTINENTAL CARBON, Warren T. Rivers and the Workers' Compensation Court, Respondents.**

**No. 90898.**

Court of Civil Appeals of Oklahoma, Division No. 1.

July 6, 1998.

Certiorari Denied Oct. 21, 1998.

---

M. Thad Groom, Oklahoma City, for Petitioner.

Fred L. Boettcher, Walt Brune, Ponca City, for Respondent, Warren T. Rivers.

John S. Oldfield, Oklahoma City, for Respondent, Continental Carbon.

## OPINION

GARRETT, Judge:

¶ 1 Respondent, Warren T. Rivers (Claimant), filed his Form 3 in the Workers' Compensation Court on August 6, 1996, alleging he sustained an accidental injury arising out of and in the course of his employment with Petitioner, WITCO (Employer). He alleged he sustained a cumulative trauma injury to both knees due to climbing ladders and stairs and unloading lignite cars. He alleged his last trauma occurred on June 30, 1995. He filed a Form 9, seeking authorization for treatment by Dr. J. In response, Employer denied Claimant was temporarily totally disabled (TTD) or permanently partially disabled (PPD). Employer also denied the necessity for medical treatment and that the injury arose out of and in the course of his employment. Employer also raised the affirmative defense of the statute of limitations. The trial court entered an order authorizing Employer to add Continental Carbon Co. (Continental), Employer's successor company, as an additional party.

¶ 2 The trial court entered an order that Claimant, prior to November 1, 1985, was aware he had sustained an accidental personal injury as a result of cumulative trauma due to aggravation of pre-existing condition to his right leg (knee) and left leg (knee) arising out of and in the course of his employment. The court found that as a result of the injury, Claimant was in need of further

medical treatment, including surgery and total knee replacements, as necessary, and ordered Employer to provide the medical treatment, to be rendered by Dr. J. The trial court also made the following findings:

That claimant asserts an injury from cumulative trauma until June 30, 1995, but not thereafter in this case. Therefore, respondent, Continental Carbon Co., which became the successor company to WITTCO (sic) on June 30, 1995 is dismissed from this case (without prejudice to the right of claimant to file a claim against Continental Carbon Co. for any alleged injury from cumulative trauma or a specific event after June 30, 1995.

That the claimant had long-term pre-existing problems with both knees. The claimant injured his right knee in 1957 (playing football) and his left knee in 1960 (playing baseball), and had surgery on both knees in 1960. The claimant also injured his left knee in 1973 (as a result of a fall in a hopper) and both knees in 1975 (which was consequential to a back injury). The claimant again injured both knees as a result of a slip and fall in 1981.

That the claimant also had injury to both of his knees from cumulative trauma during his 24 years of employment at respondent, WITTCO, (sic) until June 30, 1995. A reasonable man would have been aware that the repeated trauma of his employment tasks were aggravating his knees by at least the mid 1970's, and would have continued to be aware of the subsequent aggravation of the condition of his knees from cumulative trauma at respondent thereafter.

That the statute of limitations (as well of failure of proper notice) bars recovery for any injury from cumulative trauma prior to November 1, 1985 (when the new statute of limitations, based on the date of last exposure to cumulative trauma, became effective). However, the claimant has sustained a new injury to both of his knees in the nature of aggravation of a pre-existing condition from November 1, 1985 to June 30, 1995 as a result of continuing repeated trauma. This new injury has resulted in the need for additional surgery and repair to both of his knees for which the respondent, WITTCO, (sic) is liable.

That claimant's earliest pertinent date of awareness of the new injury to both knees (from aggravation of pre-existing condition from cumulative trauma at respondent) was November 1, 1985.

That the claimant has very significant pre-existing problems with both knees which will be particularly pertinent to the issue of apportionment of permanent partial disability. See deposition testimony of Dr. Mark Kowalski (Court's exhibit #1 and respondent's exhibit #2, at p. 9).

¶3 Claimant and Employer each filed appeals in the Workers' Compensation Court *En Banc*. A three judge panel affirmed the trial court's order, finding the trial court's order was not against the clear weight of the evidence or contrary to law. This review proceeding, brought by Employer, followed.

¶4 For reversal, Employer contends the following:

1. This claim is barred by the statute of limitations.

2. The trial court erred by dismissing Continental Carbon and ordering Petitioner WITCO to provide temporary total disability benefits and medical treatment for Claimant when he continued to work and have further injurious exposure after June 30, 1995.

¶5 Claimant testified he had been employed at WITCO, later owned by Continental, for the past 26 years. He was assigned his current job of crane operator only in February, 1997, approximately nine months before the trial occurred on November 25, 1997. Prior to that time, he had the job of building attendant, which required him to clean up spills, trash or debris left by the maintenance department in the "pellet building". He had to shovel the debris and put it in big boxes to be hauled off. He had to scoop up carbon black, which was wet and extremely heavy, using scoop shovels. He swept with a broom. If the carbon black was in a place where it could not be swept, he used air hoses and water hoses. He was also required to unload cars filled with lignite. This involved climbing up the tanks to gauge

them, climbing up and down and underneath the cars to hook them up and empty them into the tanks. He had to get underneath the car and hook up a three-inch rubber high pressure hose by stooping and holding it with his hands and knees to hook it up. Then, he had to unhook it and watch and gauge the tanks while they were being filled. The strain of scooping carbon black, pulling 100 to 200 foot hoses with 90 pounds of pressure behind it caused problems to his knees in the last ten years. Occasionally, he had to remove pieces of metal in order to clean the building. He had to climb ladders and stairs, both of which caused pain to his knees.

¶ 6 Claimant testified as to non-employment related injuries to his knees. He injured his right knee in 1957 in a football injury; his left knee in 1960 in a baseball injury. He had surgery on both knees in 1960. He injured both knees in 1975, as a consequence to a back injury. In 1981, he slipped on some ice and landed on both knees. He testified that, at that time, he was told he would need knee replacements within 1 to 2 years. He testified he felt that the work at WITCO caused increased problems with his knees. He testified that in 1990 or 1992, he realized his work was causing his knee problems to get worse, and that they have gotten continually worse from that time forward.

¶ 7 He testified his latest knee injury occurred 1½ to 2 years before the hearing. After cleaning up an oil spill, he tried to scrape off some of the solution and the oil off the heel of his shoe. He kicked it off, causing his knee to pop, and he came down on it. That incident occurred after June 30, 1995, the date Continental took over WITCO.

¶ 8 Claimant testified that no injury occurred on June 30, 1995, the date shown on his Form 3 as the date of last exposure to trauma. He stated, "If that's what I wrote, ... it was written down, because that's the way I was told to answer that question." He also said when he answered an interrogatory, he had previously stated an accident occurred on June 30, 1995 at the plant. He testified:

Q. You didn't fall on a hopper car on that date, did you?

A. No, sir. And I've griped about it ever since they did that. That was not my choice. That's what I was told. It's a legality thing, is what I was told.

¶ 9 The trial court's order holds Claimant had pre-existing conditions with his knees when his employment began. The court also held that the employment caused cumulative trauma injury to both knees through the aggravation of a pre-existing condition. The court charged Claimant with awareness of a causal connection between the injuries and his employment in the mid–1970's. The court also held any cumulative trauma injury which arose *before November 1, 1985,* was barred by the statute of limitations. On that date, 85 O.S.1981 § 43 was amended, and the "awareness doctrine" in cumulative trauma cases was eliminated. It changed the statute of limitations in such cases from one year after awareness to two years from the date of last exposure. The court held:

That the statute of limitations (as well of failure of proper notice) bars recovery for any injury from cumulative trauma prior to November 1, 1985 (when the new statute of limitations, based on the date of last exposure to cumulative trauma, became effective). However, the claimant has sustained a new injury to both of his knees in the nature of aggravation of a pre-existing condition from November 1, 1985 to June 30, 1995 as a result of continuing repeated trauma. This new injury has resulted in the need for additional surgery and repair to both of his knees for which the respondent, WITTCO, (sic) is liable. That claimant's earliest pertinent date of awareness of the new injury to both knees (from aggravation of pre-existing condition from cumulative trauma at respondent) was November 1, 1985.

¶ 10 The court's order itself indicates Claimant was, or should have been, aware of the fact his employment was causing continued injury to both knees, as early as the mid-1970's. At that time, the awareness doctrine under *Munsingwear, Inc. v. Tullis,* 1976 OK 187, 557 P.2d 899, was in effect for determining the statute of limitations in cumulative trauma cases. See also *Coy v. Dover*

*Corp./Norris Div.,* 1989 OK 71, 773 P.2d 745.[1] Moreover, Claimant testified that he filed a workers' compensation claim *in 1983* for a 1981 injury to his knees.[2] When asked why he filed a claim at that time, he stated, "So that, if in the future I needed anything done as far as surgical reasons, where it was supposedly, allegedly, quote, unquote, according to law, covered."

¶ 11 When Claimant filed the 1983 workers' compensation claim for his knees, it established his awareness that he sustained a work-related injury because of repeated traumas to his knees. Claimant continued to work in the same job doing the same work, and he said he felt his knees continued to get worse as time went on. He was exposed to the same type of repeated exposure until he started operating a crane in February, 1997. In other words, he ceased being exposed to the repetitive traumas to his knees that had caused his injury and that continued the aggravation of his pre-existing condition, despite the fact he continued to work for Employer.

▪ ¶ 12 When the statute of limitations was amended on November 1, 1985, the "awareness doctrine" ceased being the manner of determining the date of the injury for purposes of the statute of limitations. Instead, § 43 required a claimant to file a claim within two years of the date of the last exposure to the trauma. Although Claimant continued to work in the same employment doing the same job, until approximately nine months before the trial, he had not, at the time of the trial, terminated his employment which is typically the date of a claimant's last exposure to repeated trauma. In this case, the evidence shows he ceased doing the job which injured his knees over a long period of time when he got the job of crane operator in February, 1997. Since he filed his Form 3 on August 6, 1996, and was still working at the first job until February, 1997, his claim was timely. See *Marley Cooling Tower Company v. Cooper,* 1991 OK 62, 814 P.2d 472.

▪ ¶ 13 Claimant admitted he did not sustain an accident on June 30, 1995, the date Continental took over the company. The evidence shows he listed that date as the date of his last exposure because he had been instructed to do so for "legality" reasons. Thus, there was no competent evidence to support June 30, 1995, as the date of last exposure. The evidence shows he continued to work in the same job after Continental took over until he got the crane operator job. It was, therefore, error for the trial court to dismiss Continental from the case.

▪ ¶ 14 Findings of fact made by the trial court are binding and conclusive in review proceedings before this Court, unless they lack support in competent evidence. *Parks v. Norman Municipal Hospital,* 1984 OK 53, 684 P.2d 548. The trial court's finding of an aggravation of a pre-existing condition is supported by competent evidence. It is compensable as a new injury. See *ITT Continental Baking Co. v. Ware,* 1980 OK 167, 620 P.2d 1308. We also hold Claimant's Form 3 was timely filed, but it was error to dismiss Continental under the facts of this case.

¶ 15 The order of the three judge panel is sustained in part, vacated in part and remanded with directions to vacate the order as to the dismissal of Continental.

1. The Supreme Court redefined the *Munsingwear* standard in *Coy v. Dover Corp./Norris Div.,* at 1989 OK 71, ¶ 11, 773 P.2d 745, 747, as follows:

We hold that there is an implicit standard of reasonableness which determines when a claimant's level of awareness, both to the factum and to causation, satisfies the Munsingwear standards. It is therefore necessary to redefine the Munsingwear test for the commencement of the statute of limitations in cumulative injury/hearing loss cases. The statute of limitations begins to run against a claim for compensation for cumulative injuries resulting in hearing loss when the prospective claimant is possessed of facts which would make a reasonably prudent person similarly situated and of like educational background: (1) aware that he or she has an injury, and (2) aware that the injury is causally related to the working environment. We do not view this as a substantial departure from our earlier cases but, rather, a refinement of those cases that will be more in conformity with a large number of other jurisdictions. [Footnote omitted.]

2. The outcome of this claim is not part of the record in this review proceeding.

¶ 16 SUSTAINED IN PART, VACATED IN PART, AND REMANDED.

JOPLIN, P.J. and CARL B. JONES, V.C.J., concur.